|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

QUIRY ALCANTARA,

                              Petitioner,

            - versus -

DALE A. ARTUS,
Superintendent,

                              Respondent.

MEMORANDUM
AND ORDER
13-CV-4991 (JG)

A P P E A R A N C E S :

    QUIRY ALCANTARA
        #08A1702
        Wende Correctional Facility
        3622 Wende Road
        PO Box 1187
        Alden, NY 14004-1187
    By:   *Petitioner, pro se*

    CHARLES J. HYNES
        District Attorney, Kings County
        350 Jay Street, Renaissance Plaza
        Brooklyn, New York 11201
    By:   Camille O'Hara Gillespie
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Quiry Alcantara, an inmate at the Wende Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a 2008 jury trial in Supreme Court, Kings County, Alcantara was convicted of second-degree murder, *see* N.Y.P.L. § 125.25[1], and sentenced to a term of twenty-five years to life. Alcantara's direct appeal and subsequent motions for postconviction relief in the state courts were unsuccessful. He now argues that he should be afforded habeas relief because his counsel in state court was so deficient as to deprive

him of his federal constitutional right to effective legal assistance. Alcantara also claims that the trial court committed error in two evidentiary rulings.

Oral argument was held on January 31, 2014, at which Alcantara appeared via videoconference. For the reasons given below, no writ shall issue.

## BACKGROUND

A.  *Historical Facts*

The government introduced testimony demonstrating the following facts at Alcantara's 2008 trial.

At approximately 1:30 a.m. on May 7, 2005, Quiry Alcantara was on Troutman Street in Brooklyn. Tr. 414-15.[1] The victim, Abdul Carlisle, was seated in the driver's seat of a parked car. Tr. 430. Both Alcantara and Carlisle sold drugs and knew each other from the neighborhood. Tr. 403, 421-22, 689.

Melissa Aponte, a sixteen-year-old girl who lived on the same block and was familiar with both Alcantara and Carlisle, was standing a few feet from the car and described what happened next. Alcantara approached the car and began talking with Carlisle. The conversation escalated into an argument that culminated when Alcantara said, "Abdul, if you want a war, me and my peoples are ready for war." Tr. 439. After a few more words, Alcantara shot Carlisle twice in quick succession, and then three more times. Tr. 439-43.

Carlisle attempted to drive to a hospital. On the way, he called a friend, Juan Santiago. Crying, and with apparent difficulty breathing, Carlisle told Santiago before hanging up that Alcantara had shot him. Tr. 699-701. Carlisle's car crashed into a pole and swiped two

---

[1] Citations to the trial transcript, filed on the docket as exhibits to ECF No. 6 through No. 8, are preceded by "Tr."

2

other cars; he was taken to Wyckoff Heights Hospital, where he was pronounced dead a few hours later. Tr. 66-70.

A prosecution expert testified that one bullet and three fragments recovered from the scene, along with three bullets recovered from the victim's body, could be matched to a single gun. Tr. 158. A single remaining bullet fragment from the scene could not be conclusively matched to that same gun. Tr. 159.

Alcantara called the police department on May 8 and said he was concerned for his own safety; the police sent a car to pick him up. Tr. 187-91.[2] After being advised of his *Miranda* rights, he confessed to the crime. Alcantara said that Carlisle had picked on him and had beaten him up because Carlisle wanted Alcantara to sell drugs for him. Alcantara also said that when he and Carlisle were arguing in the early morning hours of May 7 he had seen Carlisle's hand move, and that Alcantara, fearing that Carlisle was reaching for a weapon, had shot him in response. Tr. 229-30.

Alcantara then memorialized that confession in a four-page, signed writing. Tr. 231-32. In his written confession, Alcantara admitted to shooting Carlisle, whom he said had bullied him for a long time. Tr. 235-39. After further *Miranda* warnings, Alcantara also confessed on video in the presence of a police officer and prosecutor at about 3:20 in the morning. Tr. 240-41.

One additional set of facts that occurred before trial, but after the main events of the crime, is relevant. The police sought out Aponte shortly after the crime, and Aponte appeared before a grand jury in May of 2005. Tr. 448-50. According to Aponte's later trial testimony, Aponte lied at her first grand jury appearance (and did not implicate Alcantara)

---

[2] Page 189 is missing from the trial transcript filed in this Court.

because she was afraid of Alcantara after hearing that she could be killed. Tr. 452-54.[3] She appeared again before the grand jury in March of 2006; according to her trial testimony, she told the truth at this second appearance, including the version of the shooting described above. Tr. 452.

B.   *Trial Proceedings*

Alcantara was charged in Kings County with second-degree murder in violation of N.Y.P.L § 125.25[1] and both second- and third-degree weapon possession in violation of N.Y.P.L. §§ 265.03[2] and 265.02[4].

In January of 2008, shortly before trial was scheduled to begin, the Supreme Court, Kings County held a hearing on several questions, including whether Alcantara's confessions would be admissible as knowingly and voluntarily given or excluded as coerced. Alcantara's trial counsel, Lawrence Wright, introduced as an expert Dr. Marc Janoson, a Ph.D. in forensic psychology. *See* SH 508.[4] Janoson delivered the results of a number of tests, including measures of Alcantara's intelligence and suggestibility; he also discussed education records from Alcantara's time in school. SH 508-09. Janoson concluded that Alcantara was mentally retarded and could not understand *Miranda* warnings. SH 186-87. The court, however, found Janoson lacked credibility for a number of reasons: among other things, he had failed to look at sources such as Alcantara's family, colleagues, and criminal record; he failed to turn over raw data and additional tests that he conducted on Alcantara after receiving the state's expert report; and he disregarded instructions on tests and presented evidence of their results notwithstanding guidelines suggesting they could not be used for those purposes. SH 510-13. Janoson also could

---

[3]   The threat apparently came from a friend of Alcantara's, who said that Alcantara himself had ordered her to be killed, but the jury did not hear that Alcantara was the source of the threat. *See* Tr. 458-61 (on-the-record discussion with attorneys with jury absent).

[4]   The transcript of the combined suppression hearing (on whether probable cause existed for Alcantara's arrest, whether a lineup identification was proper, and whether Alcantara's confession would be admissible) was filed by the state as ECF Nos. 6-1 and 6-2; citations thereto are abbreviated "SH. #."

4

not explain how, if Alcantara was illiterate, he was able to write his confession, and how he could recall facts allegedly spoon-fed to him by the police. SH 514; 516. Ultimately, the court concluded that the state had proven beyond a reasonable doubt that Alcantara had knowingly and voluntarily waived his *Miranda* rights. SH 515.

Jury selection in Alcantara's trial began on January 16, 2008, and opening statements occurred on January 22. In addition to Alcantara's confession, the state's main evidence included Aponte's eyewitness testimony, describing essentially the entire crime, and Santiago's testimony that, shortly before his death, Carlisle had identified Alcantara as the shooter. The defense presented a brief case, which centered on Alcantara's diminished mental capacity. After the close of evidence, the court, on consent of both parties, submitted only the murder charge to the jury. Tr. 823.

On February 4, 2008, the jury returned a guilty verdict. Tr. 1074. On March 20, 2008, Alcantara was sentenced to a term of twenty-five years to life.

C. *Subsequent Procedural History*

On direct appeal to the Appellate Division, Second Department, Alcantara was represented by Joshua Levine of Appellate Advocates.[5] Alcantara's appellate brief argued that (1) the court should have precluded Aponte's eyewitness testimony for failure to comply with the notice requirement of N.Y.C.P.L. § 710.30; (2) Alcantara was deprived of due process and a fair trial because of evidentiary issues related to Aponte's testimony, including trial testimony explaining why her grand jury testimony had changed; and (3) the sentence was excessive. In a November 3, 2010 decision, the Appellate Division denied those claims on the merits in a brief opinion. *People v. Alcantara*, 910 N.Y.S.2d 509 (2010). Alcantara sought, but was denied,

---

[5] The state filed Alcantara's brief on direct appeal as Exhibit B in ECF No. 8-3.

5

leave to review that decision in the Court of Appeals. *People v. Alcantara*, 16 N.Y.3d 827 (2011) (Read, *J.*).

On April 26, 2011, Alcantara moved pro se under N.Y. C.P.L. § 440.10 in Supreme Court, Kings County to vacate his judgment of conviction, arguing that the evidence was insufficient to support a conviction or that the conviction was against the weight of the evidence, and that his conviction was obtained in violation of his state and federal constitutional rights.[6] The request was initially denied in a three-page opinion. *See People v. Alcantara*, Ind. No. 1846/2006 (Sup Ct. Kings County Oct. 5, 2011) (Chun, *J.*). Alcantara then sought reconsideration, access to trial transcripts, and appointment of counsel; those requests were also denied on the basis that the underlying arguments Alcantara sought to make could have been raised on direct appeal and were therefore procedurally barred. *See People v. Alcantara*, Ind. No. 1846/2006 (Sup Ct. Kings County May 1, 2012) (Chun, *J.*).

On May 24, 2012, Alcantara filed a petition for a writ of error *coram nobis* in state court. He argued that his counsel on direct appeal was ineffective on three grounds: (1) he did not argue that trial counsel was constitutionally deficient for using an unqualified expert at the pretrial suppression hearing; (2) he did not argue that trial counsel was ineffective for failing to present a self-defense theory at trial; and (3) he did not argue insufficiency of the evidence.[7] In a very brief order, that petition was denied on the merits on November 28, 2012, and leave for appeal to the Court of Appeals was subsequently denied as well. *People v. Alcantara*, 954 N.Y.S.2d 467 (2012), *leave to appeal denied,* 21 N.Y.3d 1001 (2013) (Lippman, *C.J.*).

Alcantara filed the instant petition on July 13, 2013.

---

[6] This motion and related papers, including the two unpublished decisions cited here, are filed as Exhibit E in ECF No. 8-3.

[7] This motion and related papers are filed as Exhibit F in ECF No. 8-3.

DISCUSSION

A.  *Standard of Review*

    1.  *Exhaustion and Procedural Default*

The exhaustion requirement, codified at 28 U.S.C. §§ 2254(b) and (c), obligates a federal habeas petitioner to exhaust state judicial remedies before seeking relief from a federal court. To exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and alterations omitted); *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1981) (*en banc*). This requirement, which "springs primarily from considerations of comity" between the federal and state systems, affords the state system "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Daye*, 696 F.2d at 191.

    2.  *AEDPA Deference to State Court Decisions on the Merits*

A federal habeas court may grant habeas relief "with respect to a[ ] claim that was adjudicated on the merits in State court proceedings" only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2).[8] In addition, a federal habeas court must presume all state court factual determinations to be correct, unless the petitioner rebuts the findings by clear and convincing evidence. *Id*. § 2254(e)(1). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its

---

[8] This limitation on relief is frequently referred to as "AEDPA deference." *E.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

determination or refers to federal law in its decision.  *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (opinion for the Court by O'Connor, *J.*); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).  A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  *Id.*  Elaborating on the "unreasonable application" standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."  *Richter*, 131 S. Ct. at 786.

B.     *Standard for Showing Ineffective Assistance of Counsel*

Alcantara claims that his appellate counsel was ineffective.  To establish a claim of ineffective assistance of counsel under the federal constitution, a petitioner must show (1) that his counsel supplied deficient representation, and (2) that the petitioner suffered prejudice as a result of that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed

8

the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Proving ineffective assistance in a habeas corpus proceeding is difficult. As the Supreme Court has explained,

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788.

To show ineffective assistance of *appellate* counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Jones v. Barnes,* 463 U.S. 745, 754 (1983)). Rather, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id*.

C.   *Alcantara's Claims for Relief*

Alcantara makes five claims for relief. Mirroring his state *coram nobis* petition, the first three are claims that counsel on his original direct appeal was ineffective. The final two claims for relief, related to evidentiary rulings at trial, restate claims rejected in that same direct appeal.

9

1.      *Ineffective Assistance Regarding Expert Testimony*

Alcantara's first argument is that his appellate counsel should have argued that his trial counsel provided ineffective assistance by introducing an expert who lacked the relevant qualifications regarding competency to understand and waive *Miranda* rights and was otherwise inept.

There can be little dispute that Dr. Janoson, the defense expert who testified about Alcantara's competency to understand (and thus properly waive) his *Miranda* rights, did little to help Alcantara's case.  Although Janoson stated that he had testified in at least thirty similar proceedings before, *see* SH 128, he either did not understand or willfully ignored his obligations to inform lawyers from both sides about the work he was performing.  *See, e.g.,* SH 191-92 (describing notes and test results not turned over), 298-99; 310-13.  The court found him misleading and not credible, which was part of the reason his testimony and report were discounted.

Nonetheless, the Sixth Amendment does not directly incorporate a right to effective witnesses; it guarantees only effective assistance of counsel.  Alcantara's claim is therefore best construed as an argument that it was objectively unreasonable under *Strickland* for his lawyer to call the particular witness.  The question is then whether counsel reasonably decided to select this particular expert based on his or her qualifications, not based on whether, after the fact, the expert's testimony in fact was favorable or not.  *See Rosas v. Artus*, 05 CIV. 8440 RJS, 2013 WL 499610, at \*8 (S.D.N.Y. Jan. 29, 2013).

It is doubtful that Alcantara could satisfy that standard.  Although Janoson was not specifically qualified in the area of *Miranda* competency, he was a Ph.D. in psychology and had testified on *Miranda* competency at least thirty times.  SH 111-12; 128.  Trial counsel had worked with him before, apparently without incident.  SH 126.  Alcantara has not offered

10

evidence suggesting that trial counsel could have known in advance how poorly Janoson's testimony would go, or that counsel could have anticipated Janoson's many errors.

But even assuming for the sake of argument both that it was objectively unreasonable for trial counsel to call Janoson and that the state courts were unreasonable in determining to the contrary, Alcantara cannot meet the prejudice prong of *Strickland*. The best possible result of the exclusion hearing would have been a determination that, as a matter of law, Alcantara's confessions were inadmissible. But Alcantara's conviction rested on two additional primary evidentiary bases in addition to his confessions: Aponte's eyewitness account of the murder and Santiago's testimony about Carlisle's phone call. Especially given Aponte's proximity to the events and familiarity with the participants, it was not unreasonable for the state court to find no reasonable probability that Alcantara's trial would have been different without his confessions.[9]

        2.     *Ineffective Assistance Regarding the Sufficiency of the Evidence*

For similar reasons, I am not persuaded by Alcantara's argument that appellate counsel should have argued that the evidence at trial was insufficient. The government's case at trial rested principally on Aponte's testimony, Santiago's testimony, and Alcantara's confessions, in addition to other pieces of evidence, such as the ballistics report. Appellate counsel likely (and understandably) did not believe that there was a realistic possibility that the appellate court would find that, taking that evidence in the light most favorable to the verdict of conviction, no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See People v. Acosta*, 80 N.Y.2d 665, 672, 609 N.E.2d 518, 522 (1993) (New York law); *accord United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (federal constitutional standard). Finally,

---

[9] The respondent contends that this claim is partially unexhausted, but since I conclude it fails on the merits, I need to address that claim.

trial counsel did not preserve the issue for appellate review, further diminishing the chances that such an argument would succeed. Failing to raise a low-percentage argument on appeal in the hope of shifting focus to more credible arguments is not ineffective assistance; it is *effective* assistance.[10] In short, I cannot find the state court's rejection of this claim unreasonable.

Alcantara also makes three more specific arguments about the evidence introduced at trial, none of which is persuasive.[11] First, he argues that the evidence showed that two guns were used. But the state's ballistics expert testified that most of the bullets and fragments could be identified as coming from a single gun, and that it could not be determined whether or not the remaining fragments came from that gun as well. *See* Tr. 158-59. Alcantara offers citations to the testimony of a different police officer, but those excerpts, *see* Tr. 270-78, do not establish the presence of two guns. In any event, this argument does not undermine my determination that the state courts reasonably held that appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence.

Second, Alcantara argues that the state did not prove beyond a reasonable doubt that he acted with intent. *See* N.Y.P.L. § 125.25[1] ("A person is guilty of murder in the second degree when: With the intent to cause the death of another person, he causes the death of such person . . . ."). But a jury may infer intent from the evidence introduced at trial. *See, e.g., People v. Jones,* 765 N.Y.S.2d 661, 662 (2d Dep't 2003). Here, Aponte's account of the escalating argument, culminating in Alcantara's statements about a "war" and the close-range

---

[10] The correctness of counsel's decision not to raise evidentiary insufficiency is bolstered by the original direct appeal decision. Although the Appellate Division did not rule on the question of sufficiency of the evidence, its opinion does (in discussing a separate issue) characterize the evidence of conviction as "overwhelming." *See People v. Alcantara*, 78 A.D.3d at 722, 910 N.Y.S.2d at 511. That judgment is incompatible with a finding of insufficiency.

[11] I read these arguments as supporting Alcantara's main claim that counsel was ineffective for failing to argue insufficiency, not as freestanding arguments of insufficiency of the evidence (which would be unexhausted).

12

shooting itself, as well as Alcantara's confession, clearly permitted the inference that Alcantara intended to kill Carlisle.

Third, Alcantara argues that the fact that the trial court decided to submit only the murder charge to the jury, and declined to submit the two gun charges, indicates that the court believed that the evidence did not suffice to show that Alcantara had in fact possessed the weapon – a necessary fact in the state's theory of the case. But the provision under which the court acted, Penal Law § 300.40(6), permits the court to decline to submit some charges if the state consents. That is precisely what occurred here. Read in context, the trial court's brief remark that "[t]here is no reasonable view of the evidence as to why [the gun counts] should be submitted," *see* Tr. 823, indicates only that the court believed the government's case rose and fell together – either Alcantara was guilty of all three offenses or not guilty of any. Since the murder charge was by far the most serious, and would have dominated sentencing consequences, the court seems to have decided to simplify deliberations by trimming the other charges from the case.

In sum, Alcantara has not shown that the state courts unreasonably applied *Strickland* in rejecting his claim that appellate counsel should have raised a claim of insufficiency of the evidence.

3.   *Ineffective Assistance for Failure to Present Self-Defense Defense*

Alcantara also argues that his appellate counsel should have argued that his trial counsel was ineffective for failing to present a justification or self-defense theory at trial.

Alcantara's written confession – which was read into the record at trial – demonstrates why Alcantara might have felt that he had to defend himself, in the colloquial sense of the word "defend," from Carlisle. The confession paints a heartbreaking picture of the circumstances, and of Alcantara's mental state, before the crime; if the account is true, Alcantara

13

must have felt trapped in his own home and terrorized by Carlisle.  But the facts admitted in the confession and adduced from the witnesses at trial are not consistent with the formal requirements of a legal defense.  New York's Penal Law § 35.15 imposes a number of strict requirements before a person is permitted to use deadly force in defense of himself or another.  In particular, a person may not use deadly force unless he "reasonably believes" that the target "is using or about to use deadly physical force."  *Id*. § 35.15(2)(a).  And even in that case, he is under a duty to retreat.  *Id*.  Furthermore, the defense is totally unavailable when the target of the force "was provoked by the actor with intent to cause physical injury to another person."  *Id*. § 35.15(1)(a).

At a minimum, a jury would not likely have been persuaded that Alcantara reasonably believed that Carlisle was about to use deadly physical force.  Alcantara's petition includes the claim that "Carlisle's hand reached down for something" just before Alcantara shot him, and that Alcantara knew "from the night before" that Carlisle carried a gun.  Pet. 16-17.  This is consistent with what Alcantara apparently told a police officer in his oral confession.  *See* Tr. 230 ("[H]e said he saw [Carlisle's] hand move.").  But no gun was recovered from Carlisle's car, which would have made Alcantara's supposed view of the facts significantly less persuasive in front of a jury, and certainly made the decision not to pursue a self-defense theory reasonable.

A self-defense theory would have faced at least two additional hurdles.  First, the defense would have required a showing that Alcantara could not have safely retreated.  It is not clear from this record that he could have made such a showing (and again, the fact that no gun was recovered would have been a difficult fact for Alcantara to overcome).  Second, Alcantara would have had to show that Carlisle's alleged imminent aggression was not provoked by Alcantara with the intent to cause Carlisle injury.  That too would have been a difficult showing,

14

given that Alcantara confessed to having bought a gun and gone to confront Carlisle, and given Aponte's testimony that Alcantara asked Carlisle if he wanted a "war."

In light of these obstacles, I conclude that the state courts did not unreasonably apply *Strickland* in holding that Alcantara's appellate counsel did not provide ineffective assistance by failing to argue that trial counsel should have presented a self-defense theory to the jury. Although Alcantara had confessed to the crime, his trial lawyer was able to argue that the confession was coerced and that Alcantara did not understand what was happening. Furthermore, there was no physical evidence connecting Alcantara to the crime. It is true there was an eyewitness (Aponte) and a dying declaration (to Santiago) to deal with, but it was hardly unreasonable for trial counsel to try to win the case as presented. More to the point, Alcantara has not shown that the self-defense theory would have faced a higher chance of success. Thus, I also deny Alcantara's third claim.

4.     *Evidentiary Rulings*

Alcantara also raises two arguments he made in his original direct appeal: first, that the trial court should have precluded Aponte's identification testimony for failure to provide notice consistent with N.Y.P.L § 710.30(1)(b); and second, that the trial court erred by failing to preclude certain parts of Aponte's testimony explaining how and why she had lied to a grand jury in connection with the case. Neither claim states a violation of federal law. Relief is available in this court "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *accord Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).[12]

---

[12] Alcantara makes no argument that these evidentiary rulings deprived him of due process of law under the federal constitution. But even if his petition is read broadly to include such a claim, Alcantara could not, on these facts, establish that the alleged errors deprived him of a fundamentally fair trial. *See Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988).

15

## CONCLUSION

For the reasons stated above, Alcantara's petition is denied. Because Alcantara has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.[13]

So ordered.

John Gleeson, U.S.D.J.

Dated: February 4, 2014
      Brooklyn, New York

---

[13] At oral argument on the motion, Alcantara also requested an evidentiary hearing on some of his claims. This request is denied. Under the rule of *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1400 (2011), review under § 2254(d) is generally limited to the record that existed in the state court. Alcantara has made no showing that his claims cannot now be decided on that record. *See Pinholster*, 131 S. Ct. at 1400-01.